FILED

NOT FOR PUBLICATION

MAR 28 2011

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ZURICH SPECIALTIES LONDON LIMITED, | No. 09-56884 |
| Plaintiff - Appellee, | D.C. No. 2:08-cv-07066-SJO-FFM |
| v. | MEMORANDUM[*] |
| BICKERSTAFF, WHATLEY, RYAN & BURKHALTER, INC., a California Corporation, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted March 11, 2011
Pasadena, California

Before: B. FLETCHER, WARDLAW, and KAVANAUGH, Circuit Judges.[**]

Bickerstaff, Whatley, Ryan & Burkhalter, Inc. appeals the district court's

grant of partial summary judgment in favor of Zurich Specialties London Limited.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]    The Honorable Brett M. Kavanaugh, Circuit Judge for the District of Columbia Circuit, sitting by designation.

The district court concluded that Zurich has no duty to defend or indemnify Bickerstaff in a third-party contribution action filed by Spear, Safer, Harmon & Co. (the "underlying action"). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

1. The professional liability policy Zurich issued to Bickerstaff unambiguously excludes "claims or 'costs, charges and expenses' for or arising out of . . . the insolvency or bankruptcy of the Insured or any other person, firm or organization." Under California law, the phrase "arising out of" does "not import any particular standard of causation or theory of liability into an insurance policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship." *Acceptance Ins. Co. v. Syufy Enterprises*, 69 Cal. App. 4th 321, 328 (1999).

The underlying action arises from the insolvency of Caduceus, a medical malpractice self-insurance fund. The Florida Department of Insurance, acting as Caduceus' receiver, initially sued Spear Safer (the "receiver action"). The receiver action set forth allegations that Spear Safer's "unqualified opinions on Caduceus' financial statements, among other things, enabled Caduceus to continue to rewrite existing policies, write new insurance policies and leverage its capital well in excess of that allowed under Florida law and past the point of insolvency to the

2

detriment of Caduceus, its policyholders and claimants." Spear Safer then filed the underlying action against Bickerstaff, seeking contribution and alleging that Bickerstaff's "reserve reviews and rate level recommendations . . . directly impacted and caused the insolvency of Caduceus."

Bickerstaff's reliance on *Marquez Knolls Property Owners Ass'n, Inc. v. Executive Risk Indem., Inc.*, 153 Cal. App. 4th 228 (2007) is misplaced. The *Marquez Knolls* court concluded that, in the context of the particular insurance policy at issue, an exclusion applied only to claims stemming from the plaintiff's own activities. *Id*. at 235. By contrast, the exclusion in Bickerstaff's policy covers "the insolvency or bankruptcy of the Insured <u>or any other person, firm or organization</u>." (emphasis added). As a general matter, the *Marquez Knolls* court reinforced California's broad interpretation of "arising out of" language in insurance policy exclusions. *Id*. at 236. Therefore, the receiver and underlying actions, which together allege that Bickerstaff played a causal role in Caduceus' insolvency, satisfy California's definition of the term "arising out of," and trigger the exclusion. *See Syufy*, 69 Cal. App. 4th at 328.

Bickerstaff argues that the complaint in the receiver action alleges that Caduceus' insolvency occurred in 1993, before Bickerstaff was retained. Thus it characterizes the underlying action as a standard malpractice claim based on work

3

performed for an already insolvent client. Bickerstaff misreads the allegation in the receiver action; it in fact alleges that Caduceus was either "statutorily impaired or insolvent" by 1993. (emphasis added). Moreover, the legal definition of insolvency describes an ongoing process in which an entity is unable to meet its liabilities "as they mature." *Berg & Berg Enterprises, LLC v. Boyle*, 178 Cal. App. 4th 1020, 1042 n.23 (2009) (quoting Cal. Corp. Code § 501); *see also In re Dill*, 731 F.2d 629, 632 (9th Cir. 1984); Black's Law Dictionary at 867 (9th ed. 2009) (defining insolvency as the "condition of being unable to pay debts as they fall due or in the usual course of business" or the "inability to pay debts as they mature"). Therefore, even if Caduceus were insolvent in 1993, the exclusionary provision would still apply because the allegation is that Bickerstaff contributed to Caduceus' worsening financial condition.

2. The doctrine of concurrent causation does not apply because the alleged conduct excluded by the policy was the same as, and not independent of, the covered conduct. Under the doctrine, "[c]overage cannot be defeated simply because a separate excluded risk constitutes an additional cause of the injury" independent of the covered risk. *State Farm Mut. Auto. Ins. Co. v. Partridge*, 514 P.2d 123, 125 (Cal. 1973). Here the receiver and underlying actions both allege that Bickerstaff's work contributed to Caduceus' insolvency, and therefore the

4

covered risk of malpractice "did not exist independently of the other risk[] not covered by the policy" but rather was "directly connected to the excluded risk[]" of insolvency. *Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819, 835 (2006). Bickerstaff erroneously relies on *Conestoga Servs. Corp. v. Exec. Risk Indemnity, Inc.*, 312 F.3d 976, 983 (9th Cir. 2002), which applied the doctrine where the excluded risk of bankruptcy and the insured risk of malpractice both independently contributed to a third party's damages, but distinguished a scenario similar to Bickerstaff's in which the insured is sued "*because* [the third party] went bankrupt."

3. While an insurer's duty to defend is broader than its duty to indemnify, neither the allegations in the complaints nor any extrinsic facts known to Zurich "give rise to the potential of liability under the policy." *Gray v. Zurich Ins. Co.*, 419 P.2d 168, 177 (Cal. 1966). The potential of liability that would trigger the duty to defend can be found based on either a comparison of the allegations of the complaint with the terms of the policy, or consideration of extrinsic facts that "reveal a possibility that the claim may be covered by the policy." *Montrose Chemical Corp. v. Superior Court*, 861 P.2d 1153, 1157 (Cal. 1993). Here, the complaints in the receiver and underlying actions together allege that Bickerstaff's conduct contributed to Caduceus' insolvency, thus squarely falling under the terms

5

of the policy exclusion. Bickerstaff suggests that there is a potential of liability under the policy because Caduceus' financial situation might improve, and therefore the pleadings could be amended to reflect that it is no longer insolvent. However, an "insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." *Gunderson v. Fire Ins. Exchange*, 37 Cal. App. 4th 1106, 1114 (1995).

Because we conclude that the policy excludes coverage for Spear Safer's contribution action, we affirm the district court's conclusion that Zurich did not have a duty to indemnify Bickerstaff, or to provide it with a defense.

**AFFIRMED**.